In re:

Edgar Julian Dietrich,

    Debtor.

_____/

Case No. 08-68294
Chapter 7
Hon. Steven W. Rhodes

## Opinion Granting Motion for Sanctions for Violation of 11 U.S.C. § 362

### I. Introduction

On November 18, 2008, Edgar Julian Dietrich filed for relief under chapter 11 of the bankruptcy code. On January 12, 2009 the case was converted to chapter 7.

The movant, Peter K. Tiernan, M.D. is a judgment creditor of Dietrich as a result of a judgment entered on May 4, 2007, by the Wayne County Circuit Court. The property involved in this motion is a cottage located in Ontario, Canada. The property is subject to a lien that Tiernan perfected before Dietrich filed this bankruptcy proceeding. When Dietrich filed for bankruptcy, his appeal of Tiernan's judgment was pending in the Michigan Court of Appeals.

On February 10, 2010, this Court entered an order approving a settlement between Tiernan and the chapter 7 trustee, Kenneth A. Nathan. Pursuant to the compromise, Tiernan transferred his security interest in the Canadian property to the trustee and the trustee transferred to Tiernan the estate's right to continue the appeal of Tiernan's judgment. The order stated:

> [U]pon entry of this Order, all of the Estate of Edgar Julian Dietrich's
> interest as Defendant/Appellant in the state court appeal in the case of
> Peter K. Tiernan M.D. v. Edgar Dietrich, et al, Michigan Court of

> Appeals Docket No. 278975 (hereinafter the 'Appeal') are transferred
> and assigned to Creditor Peter K. Tiernan, M.D., who steps into the shoes
> of the Appellant, and who may take appropriate steps to immediately
> have the Appeal dismissed with prejudice, the Stay imposed by 11 U.S.C.
> § 362 being hereby lifted for this limited purpose."

On July 24, 2009, Tiernan brought an adversary proceeding against Dietrich pursuant to 11 U.S.C. §§ 523 and 727. On June 3, 2010, the Court entered a default judgment against Dietrich, denying his discharge pursuant to 11 U.S.C. § 727(a) for failing to comply with the Court's discovery orders and for his dishonesty to the Court. The Court also held that any and all Dietrich family or related trusts in which Dietrich is or was a settlor or trustee were alter-egos of Dietrich, the assets of which belong to the bankruptcy estate. The Court further found that on the very day that Dietrich filed his bankruptcy petition, he fraudulently transferred the Canadian property to his son, Eric Justin Dietrich, and that the property was property of the bankruptcy estate, subject to any lien rights held by Tiernan and subject to the settlement that the Court previously approved. The Court further held the transfer from Dietrich to his son, Eric Dietrich, was null and void.

Currently before the Court is Tiernan's motion to hold Dietrich, his ex-wife, Theresita Dietrich, and her attorney, Elizabeta Misovska, in contempt for violation of the automatic stay and for other relief as described in Part III, below.

## II. Facts

Eight months after the bankruptcy petition was filed, on July 29, 2009, Theresita Dietrich caused to be recorded in the Ontario Land Registrar a document granting her a life estate in the Canadian property. Eric Justin Dietrich was the transferor.

On December 23, 2009, Theresita Dietrich, through her attorney Misovska, filed a "Motion to Correct an Oversight and Omission in the Judgment of Divorce" in the Wayne County Circuit

Court for a 1998 Judgment of Divorce between Dietrich and Theresita Dietrich. The 1998 Judgment of Divorce states, regarding the Canadian property, "Plaintiff [Theresita Dietrich] shall have the right to use the cottage located in Canada after notifying Defendant of said intention to use the cottage and after receiving his consent which shall not be reasonably withheld." The motion claimed that the language in the judgment regarding Theresita Dietrich's interest in the property was ambiguous and sought to amend it to state, "Theresita Dietrich is hereby granted a life estate in the Canadian property." The motion also stated that the parties had inadvertently failed to place the Canadian property into an irrevocable trust and requested an amendment to include the following provision: "[The Canadian property] shall be placed into an irrevocable trust for the sole and exclusive benefit of the children of the parties, Jason Dietrich and Eric Dietrich; subject to the creation of a life estate in Theresita Dietrich hereunder." The motion further requested that these amendments be entered *nunc pro tunc*.

Neither the trustee nor Tiernan were given notice of these proceedings.

On February 11, 2010, the Wayne County Circuit Court entered an order granting the motion *nunc pro tunc*. This occurred the day after the entry of this Court's order approving the settlement between the trustee and Tiernan transferring Tiernan's security interest to the trustee.

On February 22, 2010, Tiernan reopened the appeal in the Michigan Court of Appeals for the purpose of dismissing it pursuant to the Court's Order Approving Compromise of Claim. Anthony P. Patti, Tiernan's attorney, and Catherine L. Coash, Dietrich's prior attorney, signed a stipulation to dismiss the appeal. Dietrich then sought to prevent the dismissal of the appeal by advising the court of appeals in a letter dated February 25, 2010, that he was no longer represented by Coash. On March 15, 2010, he also filed a brief *in pro per* seeking to prevent the dismissal. On March 31,

2010, the court of appeals dismissed the appeal.

On May 12, 2010, Dietrich filed an "Application for Leave to Appeal" to the Michigan Supreme Court. The Michigan Supreme Court denied the application on November 24, 2010.

Dietrich also continued to pursue litigation in Canada. On July 28, 2010, he filed a motion with the Ontario Superior Court requesting the removal of Tiernan's lien from the Canadian property and dismissing the liquidation proceedings. However, on July 30, 2010, the Superior Court lifted the stay of enforcement proceedings against the property that had been in effect pending the resolution of the appeal in Michigan. On November 3, 2010, Dietrich further appealed the matter to the Ontario Court of Appeal.

### III. Tiernan's Motion

Tiernan's motion alleges that:

1. Theresita Dietrich and Misovska's motion to modify the divorce judgment violated 11 U.S.C. § 362(a)(1) and (a)(3).

2. Theresita Dietrich's recording of a life estate interest in the Canadian property violated 11 U.S.C. § 362(a)(3) and (a)(4).

3. Dietrich's continued litigation opposing the dismissal of the appeal violated 11 U.S.C. § 362(a)(1).

4. Dietrich's appeal and petition to the Michigan Supreme Court violated 11 U.S.C. § 362(a)(1).

5. Dietrich's continued litigation in the Ontario Superior Court and the Ontario Court of Appeal violated 11 U.S.C. § 362(a)(1).

Tiernan requests an order (a) holding each of the respondents in contempt; (b) declaring null

and void *ab initio* the Wayne County Circuit Court order of February 11, 2010, allowing the amendments to the Dietrichs' divorce judgment; (c) awarding him attorney fees and costs of $14,947.5 for American counsel and $19,865.39 for Canadian counsel, incurred to address and correct the consequences of the various stay violations; (d) awarding the bankruptcy estate reimbursement of its expenses resulting form the several stay violations; and, (e) imposing a punitive sanction.

## IV. Standing

Dietrich, Theresita Dietrich, and Misovska challenge Tiernan's standing to assert a violation of the automatic stay, arguing that standing under § 362 is available only to a debtor. The Court will address this issue as a threshold matter.

### A. The Case Law

In *In re Walker*, 356 B.R. 834 (Bankr. S.D. Fla. 2006), the court set forth the fundamental principal of standing:

> The matter of standing to bring a cause of action is a jurisdictional issue, derived from the "case or controversy" requirement, under Article III, § 2 of the United States Constitution, and is therefore a threshold issue in all cases seeking to be heard in federal court. To meet constitutional requirements, a party must have a "personal stake in the outcome of the controversy." Accordingly, a party must base his claim on "his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties."

*Id.* at 855 (citations omitted).

The court explained that, consistent with the dual purposes of the automatic stay, standing under § 362 extends to parties other than a debtor. "The legislative history of the Bankruptcy Code notes two major purposes of the automatic stay. One of these purposes is protection of the estate for the benefit of creditors. . . . The other purpose is to advance the debtor's fresh start, providing

5

immediate relief from the pressure of collection activity." *Id.* at 854 (citations omitted). The court further reasoned, "If there had been any damage as a consequence of a stay violation against estate property, it would necessarily have been damage to the estate reflected in additional attorneys' fees incurred by the estate" and "[a]s the individual charged with protection of the estate for the benefit of creditors, the Chapter 7 trustee is the party with standing to seek damages for violation of the automatic stay against property of the estate." *Id.* Thus the court reasoned that the stay violation aggrieved the estate and not the debtor. Accordingly, the court concluded, "the debtor is without standing to seek sanctions for violation of the stay."

In *In re Mathson Indus.*, 423 B.R. 643 (E.D. Mich. 2010), the court further explained the creditor-protecting purpose of the automatic stay:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure in which all creditors are treated equally.

*Id.* at 647-48 (citing H.R. Rep. No. 95-595 at 340 (1977)). The court continued:

> Although cases involving stay violations typically evoke concerns for the debtor, the unique circumstances of this case implicate the [creditor protecting] purpose of the automatic stay. Defendant's refusal to provide services for and attempt to obtain possession of the machines is of no particular concern to Mathson, a company that is being liquidated; by its conduct, however, Defendant intends to increase significantly its own recovery at the expense of other creditors.

*Id.* at 648.

In *Mathson*, the defendants attempted to control the bidding on a number of injection molding machines by telling potential purchasers that it would not provide services and parts for machines purchased from the trustee plaintiff. *Id.* at 645-46. The court held that because it was the unsecured

6

creditors, rather than the debtor, that were harmed by defendant's actions, the trustee, representing the unsecured creditors, had standing to claim a violation of §362. *Id.* at 648.

### B. Application in This Case

Here, Tiernan alleges that Theresita Dietrich and Misovska's actions regarding the Canadian property harmed him rather than Dietrich. Tiernan further alleges that Dietrich himself violated the automatic stay to Tiernan's detriment. Under these circumstances, it would be absurd to rely on the debtor to police his own violations of the automatic stay. Only by allowing Tiernan to pursue Dietrich's violation would the purposes of the automatic stay be given due effect. In addition, pursuant to the analysis set forth in *In re Walker*, because Tiernan was the party that incurred significant expenses on account of the respondents' alleged violations, he is the party with standing to seek damages for those violations.

The Court's position is further informed by the plain language of §362(k), which states, "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances may recover punitive damages." In *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009), the court reasoned:

> If Congress intended to limit the remedies in § 362(k) to debtors it could have done so by the simple expedient of replacing the term "individual" with "debtor." Congress chose not to do so, and this court is unwilling to impose limitations not supported by the statutory language, jurisprudence, or legislative history. Moreover, it seems illogical to conclude that Congress intended to limit § 362(k) to debtors when one of the principal purposes behind the automatic stay is to protect creditors from unequal treatment.

*Id.* at 541 (citing *Homer Nat'l Bank v. Namie*, 95 B.R. 652, 655 (W.D. La. 1989)).

This Court too is unwilling to impose unsupported limitations to the plain meaning of the

7

statute. By granting standing to individuals damaged by a violation of the stay, the statute gives effect to the underlying principal of standing that a party must have a personal stake in the outcome of the controversy.

Finally, the Court's holding is further supported by the language of §362(a), which states, "[A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to *all* entities." (emphasis added). By making the stay operable upon all entities, Congress recognized that even the debtor is subject to the stay. The facts of this case demonstrate exactly this scenario. When a debtor or any other party violates the stay to the detriment of a creditor, that creditor has standing to challenge that violation and to recover damages caused by that violation.

### V. Violation of Stay by Theresita Dietrich and Misovska

#### A. The *Nunc Pro Tunc* Amendments of the Judgment of Divorce

Respondents Theresita Dietrich and her attorney Misovska filed papers with the Wayne County Circuit Court seeking amendments to the 1998 judgment of divorce between Dietrich and Theresita Dietrich. That court allowed the amendments after this Court's order transferred Tiernan's security interest to the trustee. The amendments gave Theresita Dietrich a life estate in the Canadian property and provided that the Canadian property was to be placed in trust for the benefit of their children.

These actions clearly constitute "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). Indeed, the respondents do not contend otherwise. Instead, they contend that these amendments were "clerical" amendments and therefore do not fall within the purview of the automatic stay. The respondents also argue that under the *Rooker-Feldman* doctrine,
8

this Court lacks the jurisdiction to set aside the amendments to the judgment or to order them void *ab initio*.

### 1. The "Clerical" Amendment Argument

The respondents cite no law that "clerical" amendments do not fall within the purview of the automatic stay of judicial proceedings against the debtor under § 362(a)(1). Certainly nothing in the language of that provision suggests such a result. Accordingly the respondents' argument is rejected on this ground alone.

Nevertheless, even if there were support for the respondents' position that § 362(a) does not stay a clerical amendment of a judgment, that exception would not apply here. In the context of interpreting "[c]lerical mistakes" under Fed. R. Civ. P. 60(a), the court in *In re West Texas Marketing Corp.*, 12 F.3d 497, 504 (5th Cir. 1994), held, "In sum, the relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule." This Court concludes that under the *West Texas Marketing* test, the amendments that the respondents sought were not clerical in nature because they clearly impacted the estate's substantive rights in the Canadian property and were intended to do so.

### 2. The *Rooker-Feldman* Argument

Under the *Rooker-Feldman* doctrine, a federal court lacks the jurisdiction to entertain a collateral attack on a state court judgment. *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994). Under this doctrine, a federal district court, as a court of original jurisdiction, lacks the jurisdiction to review, modify, or nullify a final order of a state court. *Id.* However, "[t]here are two requirements for application of the *Rooker-Feldman* doctrine: First, the plaintiff must have been

9

08-68294-mar    Doc 290    Filed 08/01/11    Entered 08/01/11 10:32:35    Page 9 of 16

a party to a final judgment in state court judicial proceedings. . . . Second, the plaintiff's federal complaint must seek 'what in substance would be an appellate review of the state judgment(s) in a United States District Court.'" *In re Lease Oil Antitrust Litigation*, 16 F. Supp.2d 744, 757 (S.D. Tex. 1998) (citations omitted) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

Because neither the trustee nor Tiernan was a party to the amendment proceedings, nor were they given notice of these proceedings, the *Rooker-Feldman* doctrine does not apply. This is not a case where a party seeks to re-litigate a state action in a federal forum. The amendments to the divorce judgment sought to make substantive changes in the rights and interests of Tiernan and the estate, and were pursued for the purpose of impeding their rights to the Canadian property. Accordingly, the Court holds that the amendments are void *ab initio* as a violation of the automatic stay. *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993) ("[W]e hold that actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances.").

### B. Recording a Life Estate Interest in the Canadian Property

On July 29, 2009, Theresita Dietrich caused to be recorded in the Ontario Land Registrar a document granting her a life estate in the Canadian property. In the default judgment entered in the adversary proceeding on June 3, 2010, the Court held that Dietrich's transfer of the Canadian property on the date that his bankruptcy petition was filed was a fraudulent transfer and that the Canadian property had been property of the estate since the date of filing of the bankruptcy petition on November 18, 2008.

The acts of Theresita Dietrich and Misovska in recording this document clearly violated § 362(a)(3) as an act to exercise control over and obtain possession of property of the estate.

Indeed, the respondents do not contest that their actions fall within the language of §362.

The respondents argue that their action was *in rem* in nature and outside the jurisdiction of the Court. They also argue that the Order Approving Compromise of Claim, entered by the Court on February 10, 2010, authorized their actions in Canada.

### 1. The Argument That the Canadian Property Is Not Subject to This Court's Jurisdiction

Because these parties have made appearances in this Court, the Court exercises personal jurisdiction over them and this Court does have the jurisdiction to sanction their violation of the automatic stay regardless of where that violation was committed.

The core of respondents' argument appears to be that the automatic stay has no extraterritorial application. On this point, in *In re Simon*, 153 F.3d 991 (9th Cir. 1998), the court concluded:

> The district court properly concluded that as to actions against the bankruptcy estate, Congress clearly intended extraterritorial application of the Bankruptcy Code. The filing of a bankruptcy petition under 11 U.S.C. §§ 301, 302 or 303 creates a bankruptcy estate. 11 U.S.C. § 541(a). With certain exceptions, the estate is comprised of the debtor's legal or equitable interests in property "wherever located and by whomever held." *Id.* (emphasis supplied). The district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate. 28 U.S.C. § 1334(e). . . . The court's exercise of "custody" over the debtor's property, via its exercise of in rem jurisdiction, essentially creates a fiction that the property - regardless of actual location - is legally located within the jurisdictional boundaries of the district in which the court sits.

*Id.* at 996 (citations omitted).

In *In re Rimsat, Ltd.*, 98 F.3d 956 (7th Cir. 1996), the court explained:

> Although the primary use of the automatic stay is to prevent the debtor's estate from being picked to pieces by creditors . . . the stay is not limited to that use. Its use here is consistent with both the statutory language, see §§ 362(a)(1) and (a)(3), and the statutory purpose of preventing a "chaotic and uncontrolled scramble for the debtor's assets in a variety of

11

> uncoordinated proceedings in different courts." . . . Unlike a creditor's action, Hilliard's recourse to the Nevis court did not threaten to deplete the estate directly. But it did imperil the orderly administration of the bankruptcy proceeding, and by doing so it posed an indirect threat to the estate.

*Id.* at 961 (citations omitted). The court continued:

> [T]he mere existence of a foreign proceeding affecting the debtor does not, as Hilliard believes, invalidate the stay by giving it an impermissible extraterritorial reach. Hilliard is a U.S. citizen, incontestably within the jurisdiction of the Congress of the United States, which can by statute (the automatic stay) forbid him to conduct proceedings anywhere in the world that would affect the debtor's property.

*Id.*

This Court has ordered that the Canadian property is property of the bankruptcy estate and all of the claimants to it are before the Court. Accordingly, this Court has exclusive in rem jurisdiction over the property. Section 362(a)(3) bars "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

### 2. The Argument That This Court's Order of February 10, 2010 Authorized the Filing

The order of February 10, 2010, states in relevant part, "[T]he entry and approval of the Motion is without prejudice to any parties' rights, claims and interests in the subject property, and is in no way intended to affect their right to assert any arguments and defenses in the Canadian courts." From the plain language of this order, it is clear that the order preserves but does not change any rights of the parties. Theresita Dietrich and Misovska never had the right to record a life interest in the Canadian property without relief from the stay and this order does not give them that right.

Accordingly, the Court holds that the recording of the life estate was a violation of the

automatic stay and is therefore void and of no effect.

## VI. Violations of the Automatic Stay by Edgar Dietrich

### A. Dietrich's Attempts to Stop the Dismissal of the Michigan Appeal

Dietrich took actions in the Michigan Court of Appeals in an attempt to stop the dismissal of the appeal. On February 25, 2010, he sent a letter and on March 15, 2010, he filed a brief. Section 362(a)(1) stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." The appeal was part of pre-bankruptcy litigation against Dietrich. Thus, Dietrich's actions to prevent the dismissal of the appeal were a "continuation of a judicial proceeding against the debtor" and therefore a violation of the automatic stay.

Dietrich states, "subsequent to entry of the Michigan Court of Appeals' December 4, 2008, stay order, the Debtor took no further affirmative act in the Michigan Court of Appeals." (Debtor's Obj. at 4, Dkt # 275.) This assertion is a blatant misrepresentation. The Michigan Court of Appeals' docket reflects that Dietrich had filed a brief in opposition to the dismissal and had numerous correspondences with the appeals court. These actions violated the automatic stay.

### B. Appeal Petition to Michigan Supreme Court

On May 12, 2010, Dietrich filed an "Application for Leave to Appeal" to the Michigan Supreme Court. Dietrich sets forth many arguments and cites many authorities which establish that he had standing to appeal to the Michigan Supreme Court. Dietrich confuses the issue of standing with the issue of violating the automatic stay. These issues are separate and independent. Because this filing sought to continue the pre-petition litigation against him, it was a violation of the automatic stay under § 362(a)(1).

### C. The Appeal Petition to Ontario Court of Appeal

Dietrich also filed a motion with the Ontario Superior Court and an appeal to the Ontario Court of Appeal to prevent the liquidation of the Canadian property. Dietrich argues that his actions in Canada are *in rem* in nature and outside the jurisdiction of the Court. The Court has already addressed this issue and held that the Court has jurisdiction over the Canadian property. Dietrich's efforts to prevent the liquidation of the Canadian property are a clear violation of the automatic stay under § 362(a)(3).

### VII. The Willfulness of the Stay Violations

11 U.S.C. § 362(k)(1) states, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

"A violation of the stay is willful if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *In re Medlin*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996). In *In re Printup*, 264 B.R. 169 (Bankr. E.D. Tenn. 2001), the court further elaborated:

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.
>
> Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*Id.* at 173 (citing *In Re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)).

Dietrich, Theresita Dietrich and Misovska were fully aware of Dietrich's bankruptcy proceedings when they undertook the actions that violated the automatic stay. Consequently, the Court must find that their stay violations were willful.

14

Because the respondents committed these stay violations with knowledge of Dietrich's bankruptcy proceeding, it is inconsequential whether Theresita Dietrich and Misovska believed that the Court's Order Approving Compromise of Claim authorized their actions in Canada. Regardless, the Court does not find their assertions of belief credible. Although their actions in Canada might have given an appearance of an innocent transgression, their actions in Michigan demonstrated a willful disregard of the automatic stay. Theresita Dietrich and Misovska may not now attempt to hide behind the language of the Court's order approving the compromise.

Accordingly, the Court finds that Dietrich, Theresita Dietrich and Misovska's actions willfully violated the automatic stay.

### VIII. Relief

The Court holds that under 11 U.S.C. § 362(k) relief is warranted against Dietrich, Theresita Dietrich and Misovska. There is, however, no reason to consider the relief of contempt that Tiernan seeks because the other relief that Tiernan seeks can be awarded upon a finding that the respondents willfully violated the automatic stay and a finding of contempt accomplishes no necessary purpose. *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 293 (4th Cir. 1986) ("[C]ivil contempt is not a necessary predicate in order to impose the sanctions of § 362([k]). Proof that a debtor has been injured by a willful violation of the automatic stay is sufficient to invoke the sanctions under that section, of actual and punitive damages, costs and attorneys' fees.").

Tiernan's American and Canadian lawyers have requested costs and attorneys' fees in the amount of $34,812.89, incurred for challenging these actions. The Court has reviewed the documentation of the attorneys' time and costs, and finds that the request is reasonable. Also, the respondents do not dispute that the fees are reasonable. Thus, the Court grants Tiernan $34,812.89

15

in attorneys' fees and costs.

The Court finds that these stay violations were all undertaken pursuant to the improper purpose of removing and keeping the Canadian property from the bankruptcy estate Accordingly, the Court finds it appropriate to hold Dietrich, Theresita Dietrich, and Misovska jointly and severally liable for the full amount of damages awarded to Tiernan.

Further, the Court orders that the Wayne County Circuit Court order of February 11, 2010, granting the amendments to the Dietrichs' divorce judgment is void and of no effect *ab initio*.

With regard to Tiernan's request for reimbursement to the estate of the expenses that it has incurred due to these stay violations, that request is denied without prejudice to the trustee's right to seek that relief.

Finally, the Court concludes that the respondents' pattern of stay violations was particularly flagrant and warrants punitive damages under § 362(k). In its discretion, the Court fixes the punitive damages at $10,000, with joint and several liability among the respondents.

Not for Publication

**Signed on August 01, 2011**

                                                              **/s/ Steven Rhodes**
                                                            **Steven Rhodes**
                                                            **United States Bankruptcy Judge**